THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | CASE NO. C16-1556-JCC |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| MARJORIE WIGHT, *et al.*, | |
| Defendants. | |

This matter comes before the Court on the Government's motion for summary judgment (Dkt. No. 36). Having thoroughly considered the parties' briefing and the relevant record, the Court GRANTS in part and DENIES in part the motion for the reasons explained herein.

# I. BACKGROUND

The Government filed a complaint with this Court in October 2016 seeking the foreclosure and sale of real property[1] that Defendant Marjorie Wight transferred to her grandson, Defendant Matthew Migel (Counts II and III) (Dkt. No. 1 at 5–9). The Government asked the Court to set aside the transfer as fraudulent. (*Id*. at 8–9.) Prior to the transfer, the property was held by the estate of Ms. Wight's sister. (Dkt. No. 37-6.) Ms. Wight was the estate's personal

---

[1] The legal description of the property, located at 15440 85th Avenue N.E., Kenmore, Washington, 98028, is: LOT 9, MOORLAND LANES, ACCORDING TO PLAT RECORDED IN VOLUME 64 OF PLATS, PAGE 25, IN KING COUNTY, WASHINGTON. (Dkt. Nos. 37-6 at 3, 37-7 at 2, 37-8 at 3.)

representative and sole remaining beneficiary. (Dkt. Nos. 37-2, 37-3, 37-4.) In May 2012, Ms. Wight, acting as personal representative, signed a warranty deed conveying the property to Mr. Migel. (Dkt. No. 37-7.) Ms. Wight later admitted that she did so "for zero consideration" and without a directive from her sister's will. (Dkt. No. 37-8 at 3.) At the time, the Government held a personal judgment against Ms. Wight for federal income tax debt exceeding $2 million.[2] (Dkt. No. 37-1.)

The Government moves for summary judgment. (Dkt. No. 36.) Ms. Wight does not oppose the motion but Mr. Migel does. (Dkt. No. 41.)

## II. DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In doing so, the Court must view the facts and justifiable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)).

### A. The Transfer to Mr. Migel

Washington's Uniform Fraudulent Transfers Act ("UFTA"), chapter 19.40 of the Revised Code of Washington, generally allows courts to set aside fraudulent transfers. Mr. Migel argues that UFTA's four-year statute of limitations applies, and on this basis, the Government's UFTA claim is untimely. (Dkt. No. 41 at 4.) Mr. Migel further argues that even if UFTA's statute of limitations does not apply, genuine issues of material fact exist as to whether Ms. Wight's conveyance was fraudulent. (*Id.* at 5.)

The Court does not find Mr. Migel's statute of limitations argument persuasive.

---

[2] Inclusive of interest and penalties through August 2001. (Dkt. No. 3-1 at 4.)

"[A]lthough the IRS must rely on the [state's fraudulent transfer law] to establish Petitioner's transferee liability, the [G]overnment's right to collect money in this case clearly derives from the operation of federal law" and as such the court "will not allow the 'extinguishment' of a valid, fully accrued claim by the IRS brought under the [fraudulent transfer statute]." *Bresson v. C.I.R.*, 213 F.3d 1173, 1178 (9th Cir. 2000).[3] Meaning, Washington's UFTA statute of limitations does not apply to the Government's claim. While the relevant federal statute of limitations for tax debt is normally ten years, *see* 26 U.S.C. § 6502(a)(1), that limitation does not apply once a tax liability is reduced to judgment, as is the case here. (*See* Dkt. No. 37-1) (judgment); *U.S. v. Overman*, 424 F.2d 1142, 1145–47 (9th Cir. 1970) (holding that once a tax liability is reduced to judgment, both the judgment and the tax liens exist until the amount is paid). Therefore, there is no operative statute of limitations here.

Nor does the Court find merit in Mr. Migel's argument that even if there is no statute of limitations, summary judgment is premature based on genuine issues of fact as to whether the conveyance was fraudulent. (Dkt. No. 41 at 7.) First, he provides no evidence to support this assertion. (*See generally* Dkt. No. 41.) Second, he relies on an inapplicable UFTA provision. Mr. Migel relies on the fact-intensive UFTA provision addressing transfers with demonstrated fraudulent intent. (*See* Dkt. No. 41 at 7–8) (citing Wash. Rev. Code. 19.40.041). But the Government's motion is based on UFTA's provision for *constructive* fraudulent transfers. (*See* Dkt. No. 36 at 4–7) (citing Wash. Rev. Code. 19.40.051). Under this provision, no intent need be shown. Wash. Rev. Code. 19.40.051(1). A transfer is *constructively* fraudulent if a debtor

---

[3] The statute at issue in *Bresson*, California's Uniform Fraudulent Transfer Act ("CUFTA"), like Washington's UFTA, utilizes an extinguishment provision rather than a traditional statute of limitations. *Compare* Wash. Rev. Code § 19.40.091, *with* Cal. Civ. Code § 3439.09 (nearly identical operative language). As the Ninth Circuit noted, CUFTA's extinguishment provision was a "conscious attempt to evade" the general rule, described in *U.S. v. Summerlin*, 310 U.S. 414, 416 (1940), that the "United States is not bound by state statutes of limitation." *See Bresson*, 213 F.3d at 1179. Accordingly, the Ninth Circuit treats such extinguishment provisions as statutes of limitations. *Id*.

transferred an asset "without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer . . . ." *Id*. Here, the Government presents uncontroverted evidence supporting these elements: the property was worth approximately $405,000 at the time of the transfer, Ms. Wight had no other significant assets, and she owed the Government in excess of $2 million. (*See* Dkt. Nos. 37 at 4, 37-1 at 4, 37-9 at 3–4). Mr. Migel provides no evidence in rebuttal. Therefore, the Court GRANTS summary judgment to the Government and VACATES Ms. Wight's transfer of the property to Mr. Migel.

### B. Foreclosure and Decree of Sale

The Government also seeks foreclosure of tax liens on the property and a decree of sale (Count III). (Dkt. No. 1 at 9.) The Government provides uncontroverted evidence that it recorded an abstract of judgment in King County on August 15, 2014 and a notice of federal tax lien on November 20, 2014. (Dkt. No. 38-2 at 2.) However, the Court previously determined that the tax lien is subordinate to deeds of trust U.S. Bank previously recorded on the property. (*See* Dkt. No. 40 at 1–2.) Further, the Court understands that the Government granted Ms. Wight a life estate in the property in exchange for her agreement to abandon her administrative appeal of the underlying tax determination. (Dkt. No. 36 at 2.) Therefore, the Court ORDERS that, subject to Ms. Wight's life estate, the property be foreclosed and sold to satisfy outstanding liens pursuant to 26 U.S.C. section 7403(c) and 28 U.S.C. section 2001. The proceeds are to be distributed pursuant to the Court's previous order addressing the priority of current liens. (*See* Dkt. No. 40.)

### C. Government's Remaining Claims

The Government also asks the Court to hold that Mr. Migel took his interest in the property subject to Ms. Wight's tax liens (Count I) and to enter a money judgment against Mr. Migel in the amount of the value of the property at the time of transfer (Count IV). Because the Court has set aside the transfer and ordered the property be foreclosed and sold, these claims are mooted. Accordingly, summary judgment on these claims is DENIED.

### III. CONCLUSION

For the reasons described above, the Government's motion for summary judgment (Dkt. No. 36) is GRANTED in part and DENIED in part. The conveyance to Mr. Migel is vacated as constructively fraudulent. The tax liens are foreclosed and the property shall be sold once Ms. Wight's life estate terminates. The Government is INSTRUCTED to submit an order of sale for Court approval. The Government's remaining claims are mooted by this ruling. Accordingly, the Clerk is DIRECTED to statistically close the case.

DATED this 11th day of June 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE